UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
CRISTIAN C. BROWN,                      )
                                        )
                Plaintiff,              )
                                        )
        v.                              )        Civil Action No. 03-1376 (PLF)
                                        )
BROADCASTING BOARD OF GOVERNORS,        )
                                        )
                Defendant.              )
_____ )

OPINION

        Plaintiff Cristian Brown brings suit under Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, against his employer, the Broadcasting Board of

Governors ("BBG").[1]  He claims that the BBG (1) retaliated against him for prior protected

activity, and (2) discriminated against him based on his race (African American) when it failed to

hire him for two positions for which he applied in 2001.  See Complaint ¶¶ 7-35 ("Compl.").

The matter is now before the Court on the BBG's motion for summary judgment ("Mot."), Mr.

Brown's opposition ("Opp."), and the BBG's reply ("Reply").  For the reasons stated below, the

Court will grant the BBG's motion for summary judgment, enter judgment for the BBG on all of

Mr. Brown's claims, and dismiss the case.

_____

        [1]     The BBG "is the independent federal agency that supervises all U.S. nonmilitary
international broadcasting services [including Voice of America, Radio Free Europe/Radio
Liberty, Radio Free Asia, Radio and TV Martí, Radio Sawa and Alhurra Television]. . . .  The
BBG's broadcasters reach over 175 million people per week in 60 languages around the world."
Broadcasting Board of Governors Fact Sheet, available at http://www.bbg.gov/about/documents/
BBGFactSheet2-09.pdf.

## I.  BACKGROUND[2]

Mr. Brown has worked at the BBG since 1988 and has held a variety of positions during that time.  He is currently employed as an Internet News Writer/Editor for the Voice of America, a component of the BBG.  See Defendant's Statement of Material Facts Not In Dispute ¶ 2 ("DSMF").  In that position, he "writes and edits articles and other forms of news pieces that are posted on [Voice of America's English-language] website."  Mot., Ex. F, Record of Investigation at 5 (Nov. 15, 2002) ("ROI").  "Mr. Brown also operates a side business developing and designing websites for small businesses . . . , and during the latter half of 2001 was in the process of completing a certification in web development and design."  ROI at 5.

In 1996, Mr. Brown filed an Equal Employment Opportunity complaint in which he claimed that the component of the BBG for which he worked at the time had discriminated against him on the basis of his race and gender when it denied his request to telecommute.  See DSMF ¶ 14; ROI at 5.  Ultimately, that EEO complaint was settled and Mr. Brown was permitted to telecommute.  See Mot., Ex. A, Affidavit of Cristian Brown at 1 (Oct. 8, 2002) ("First Brown Aff.").  None of the officials who made the hiring decisions at issue in this case were named in or implicated by Mr. Brown's 1996 EEO complaint, nor were any of those officials aware of Mr. Brown's 1996 EEO complaint when they made the hiring decisions at issue in this case.  See DSMF ¶¶ 15, 16.

---

[2]    This case has a relatively complicated procedural history.  See, e.g., Brown v. Tomlinson, Civil Action No. 03-1376, Order at 1 (D.D.C. Mar. 14, 2005) (denying Mr. Brown's motion to enforce purported oral settlement agreement); Brown v. Tomlinson, 383 F. Supp. 2d 26 (D.D.C. 2005) (granting the BBG's first motion for summary judgment); Brown v. Tomlinson, 462 F. Supp. 2d 16 (D.D.C. 2006) (granting Mr. Brown's motion to vacate memorandum opinion and order granting summary judgment to the BBG).  Only the facts set forth herein, however, have any bearing on the BBG's pending motion for summary judgment.

In or about June 2001, Mr. Brown applied for the position of Assistant Internet Development Coordinator (Vacancy Announcement No. M/P 01-119), a position within Voice of America's newly created Office of Internet Development ("OID").  See First Brown Aff. at 2.[3] OID Director Connie Stephens, OID Internet Design Coordinator Rich Mathews, and OID Internet Development Coordinator Peter Vaselopulos made up the selection panel for this position.  Ms. Stephens was the ultimate decisionmaker.  See DSMF ¶ 5.

The BBG's Office of Personnel places all qualified candidates for vacant positions on "certificates of eligibility," Mot. at 5 n.1, organized according to the candidates' "grade level, experience, and whether or not they [are] federal employees."  ROI at 6.  These certificates are then forwarded to selecting officials, who choose which certificates – that is, which slates of candidates – they wish to interview.  To be clear, BBG policy does not require that selecting officials interview *all* of the individuals on *all* of the certificates of eligibility forwarded to them. But "if the selecting official[s] interview[] one candidate on a certificate, [they] must interview all other candidates on that certificate."  Mot. at 7.

At the time he applied for position M/P 01-119, Mr. Brown was employed as a GS-12-level Service Coordinator.  On August 12, 2001 – that is, well after submitting his application – he was promoted to his current position, which is a GS-13-level position.  See Mot., Ex. M, Notification of Personnel Action (Aug. 12, 2001).  That promotion made him eligible, it seems, to be placed on a certificate for which he was not eligible before he was

---

[3]      "The OID was formed in 2000 to act as the central overseer and support unit for the [more than 60] [Voice of America] Internet websites.  It is responsible for coordinating the development and maintenance of these sites, which includes the hosting of [Voice of America's] content management system, databases, firewall security and web design."  Mot., Ex. H, Affidavit of Peter Vaselopulos at 1 (Oct. 22, 2002) (footnote omitted).

promoted: the "Non-Competitive for GS-13 Level" certificate.  See Compl. ¶¶ 17, 18; see also

Mot. at 13 n.16.  Nevertheless, when it subsequently created the certificates of eligibility for

position M/P 01-119, the BBG's Office of Personnel did *not* place Mr. Brown on that certificate.

Instead, it placed him on two other certificates: the "Promotion for GS-13 Level" certificate and

the "Non-Competitive for GS-12 Level" certificate.  See Mot., Ex. E, Certificates of Eligibility

for Vacancy Announcement No. M/P 01-119 at 3, 4 (Oct. 1, 2001).  Ms. Stephens, Mr. Mathews

and Mr. Vaselopulos chose not to interview candidates from the two certificates on which Mr.

Brown was listed.  Rather, they chose to interview candidates from the "Delegated Competitive

Examining Unit for GS-12 Level" certificate and the "Non-Competitive for GS-13 Level"

certificate.  As a result, Mr. Brown was not interviewed for position M/P 01-119.  Interviews for

the position took place over the course of two weeks in October 2001.  On or about November

13, 2001, the BBG selected Martha Townes, a Caucasian woman whose name appeared on the

"Non-Competitive for GS-13 Level" certificate.  See DSMF ¶ 8.[4]

        In or about August 2001, Mr. Brown applied for the position of Assistant Internet

Design Coordinator (Vacancy Announcement No. M/P 01-151), another position within the OID.

See First Brown Aff. at 3.  Once again, Ms. Stephens served as the ultimate selecting official and

Mr. Mathews and Mr. Vaselopulos rounded out the selection panel.  See DSMF ¶ 10.

        This time Mr. Brown was listed on one of the certificates from which the selection

panel chose to interview: specifically, the "Non-Competitive for GS-13 Level" certificate.  See

Mot., Ex. O, Certificates of Eligibility for Vacancy Announcement M/P 01-115 at 1 (Jan. 4,

---

        [4]        Ms. Townes' name also appeared on another certificate from which the selecting
officials chose not to interview.  See Mot. at 8.

2002).  Mr. Brown was interviewed on January 18, 2002, but he was not selected for the position.

Rather, it was offered to a non-BBG employee named Susan Kim.  Ms. Kim, an Asian American

woman, declined the offer.  The BBG then offered the position to a Caucasian man named

Robert Duckwall, who accepted it.  See Mot. at 19-20; see also DSMF ¶¶ 12, 13.

After exhausting his administrative remedies, see Brown v. Tomlinson, 462 F.

Supp. 2d 16 (D.D.C. 2006), Mr. Brown filed this lawsuit on June 24, 2003.  He argues that the

BBG retaliated against him for filing his 1996 EEO complaint, and discriminated against him on

the basis of his race, when it failed to select him for positions M/P 01-119 and M/P 01-151.  The

BBG has moved for summary judgment, arguing (1) that Mr. Brown cannot make out a *prima*

*facie* case of retaliation (or, in the alternative, that Mr. Brown has conceded his retaliation claim

by failing to contest the BBG's arguments for summary judgment on that claim); (2) that the

agency has set forth legitimate, non-discriminatory reasons for not selecting Mr. Brown; and

(3) that Mr. Brown has failed to identify evidence from which a reasonable jury could conclude

that the BBG's asserted reasons for not selecting him are pretexts for discrimination.

## II.  GOVERNING LAW

Title VII makes it unlawful for an employer to retaliate against an employee for

engaging in protected activity such as filing a charge of discrimination.  See 42 U.S.C. § 2000e-

3(a).  Title VII also provides, in pertinent part, that "[a]ll personnel actions affecting employees

or applicants for employment . . . in executive agencies . . . shall be made free from any

discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16.

### III.  STANDARD OF REVIEW

Summary judgment may be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination."  Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.  On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence."  Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  He is required to provide evidence that would permit a reasonable jury to find in his favor.  Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.  To defeat a motion for summary judgment, a plaintiff

must have more than "a scintilla of evidence to support his claims." <u>Freedman v. MCI</u>

<u>Telecommunications Corp.</u>, 255 F.3d 840, 845 (D.C. Cir. 2001).

## IV.  RETALIATION

Mr. Brown's retaliation claim fails for two reasons.  First, Mr. Brown's opposition

papers fail to allude to his retaliation claim or to any of the BBG's arguments in support of its

motion for summary judgment on that claim.  <u>See</u> Reply at 6.[5]  Thus, it appears that Mr. Brown

now concedes that the BBG is entitled to summary judgment on his retaliation claim.  <u>See</u>, <u>e.g.</u>,

<u>Buggs v. Powell</u>, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (if "a plaintiff files an opposition to a

dispositive motion and addresses only certain arguments raised by the defendant, a court may

treat those arguments that the plaintiff failed to address as conceded").

Second, Mr. Brown acknowledges the truth of paragraphs 15 and 16 of the BBG's

statement of material facts not in dispute.  <u>See</u> Opp. at 1.  Those two paragraphs state:

---

[5]     Mr. Brown's opposition papers consist of (1) a three-page memorandum of law, and (2) the Second Brown Affidavit, in which Mr. Brown sets forth his version of events and highlights certain aspects of key witnesses' deposition testimony.  <u>See</u> Opp., Ex. 1, Affidavit of Cristian Brown (Dec. 3, 2008) ("Second Brown Aff.").  The BBG argues that the Court should strike the Second Brown Affidavit pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, <u>see</u> FED. R. CIV. P. 12(f) (permitting the Court to strike any matter in a pleading that is "redundant, immaterial, impertinent, or scandalous"), because Rule 56(e)(1) requires a "supporting or opposing affidavit [to] be made on personal knowledge," FED. R. CIV. P. 56(e)(1), and Mr. Brown's affidavit is little more than "a listing of selected statements made by other people which [Mr. Brown] has taken from depositions and affidavits[.]"  Reply at 3.

The Court declines to strike the Second Brown Affidavit because (1) an opposition to a motion is not a pleading; (2) striking pleadings is an extreme and disfavored remedy, <u>see</u> <u>Walker v. Paulson</u>, Civil Action No. 06-1115, Memorandum Opinion, 2007 U.S. Dist. LEXIS 41218 at *3 (D.D.C. June 7, 2007); and (3) even assuming that the Second Brown Affidavit complies with the Federal Rules of Civil Procedure, for reasons explained herein it offers no basis for denying the BBG's motion for summary judgment.

15.  None of the [BBG] officials identified in the present case were involved in [Mr. Brown's 1996 EEO] action. . . .

16.  At the time of the selections for [positions M/P 01-119 and M/P 01-151], none of the [selecting officials] were aware of [Mr. Brown's] 1996 EEO activity. . . .

DSMF ¶¶ 15, 16.  That acknowledgment is fatal to Mr. Brown's retaliation claim.  To establish a *prima facie* case of retaliation under Title VII, a plaintiff must, among other things, present evidence that "the adverse action was causally related to the exercise of [his] rights."  Holcomb v. Powell, 433 F.3d at 901-02; see also Jones v. Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009); Baloch v. Kempthorne, 550 F.3d 1191 (D.C. Cir. 2008).  By acknowledging that none of the selecting officials was aware of his prior EEO activity – and by failing to identify any other way in which that activity affected or could have affected his candidacy for positions M/P 01-119 and M/P 01-151 – Mr. Brown has in effect acknowledged that there is no evidence of a causal relationship between the exercise of his EEO rights and the hiring decisions at issue in this case.  As a result, the BBG is entitled to summary judgment on Mr. Brown's retaliation claim.

## V.  DISCRIMINATION

Mr. Brown offers no direct evidence of discrimination with respect to his claim that he was discriminated against when he was not selected for the two positions at issue.  His discrimination claim therefore must be analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  But where, as here,

an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not – *and should not* – decide whether the plaintiff actually made out a *prima facie* case under McDonnell Douglas.  Rather, in considering an employer's motion

8

> for summary judgment or judgment as a matter of law in those
> circumstances, the district court must resolve one central question:
> Has the employee produced sufficient evidence for a reasonable
> jury to find that the employer's asserted non-discriminatory reason
> was not the actual reason and that the employer intentionally
> discriminated against the employee on the basis of race, color,
> religion, sex, or national origin?

Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 492 (D.C. Cir. 2008) (emphasis in

original).  Mr. Brown has suffered an adverse employment action – non-selection for the two

positions at issue.  Thus, as instructed by Brady, the Court will "turn directly to the central

issue": whether Mr. Brown has produced evidence sufficient for a reasonable jury to find that the

BBG's stated reasons for not selecting him are not the actual reasons and that the BBG

intentionally discriminated against him based on his race.  Id. at 495.

### A.  The BBG's Asserted Reasons

The BBG asserts that Mr. Brown was not selected for position M/P 01-119

because he was not interviewed for that position, and that he was not interviewed for that

position because his name did not appear on any of the certificates from which the panel chose to

interview.  See Mot. at 7-9.  The BBG further argues that there is no evidence that the panel's

choice of certificates was motivated in any way by discriminatory animus.  See id. at 15.  As for

position M/P 01-151, the BBG asserts that Mr. Brown was not selected because he possessed less

computer-related graphics expertise than the selectees, and therefore was less qualified for the

job.  See Mot. at 20-23 (describing selectees' "in-depth (web) graphic arts backgrounds")

(quoting ROI at 6); see also id. at 23 ("According to all of the panel members[,] Ms. Kim and

Mr. Duckwall were selected because they were, by far, [more] qualified . . . than plaintiff.  This is the quintessential legitimate, non-discriminatory reason in a non-selection case.").

### B.  Mr. Brown's Attempts to Raise an Inference of Discrimination

Mr. Brown offers several arguments in support of the proposition that a reasonable jury could conclude that the BBG's asserted reasons for not selecting him are mere pretexts for discrimination.  Some arguments relate to the BBG's failure to select him for both positions; some relate only to the BBG's failure to select him for one of the two positions.  The Court addresses each of these arguments below, and explains why none of them saves Mr. Brown's discrimination claim from summary judgment.

### 1.  Race of Selecting Officials (Both Positions)

First, Mr. Brown argues that a reasonable jury could conclude that he suffered unlawful discrimination when he was not selected for both positions because (1) all of the selecting officials – that is, Ms. Stephens, Mr. Matthews and Mr. Vaselopulos – were Caucasian, and (2) BBG policy requires "panels that consider[] applicants . . . to be fully integrated and not have three Caucasian[s] mak[ing] the decisions as to which applicant[s]" are selected.  Opp. at 1; see also id. (arguing that this "misconduct by the agency in the selection process" supports an inference of discrimination and precludes summary judgment).

This argument fails.  As an initial matter, nothing in the record supports Mr. Brown's claim that BBG policy prohibits "all-Caucasian" selection panels.  See Reply at 6 n.4. In any event, even assuming that such a policy existed and that the BBG deviated from it, that would not preclude the entry of summary judgment in the BBG's favor.  As the D.C. Circuit has

explained, an employer's "failure to follow its own regulations and procedures, alone, may not be sufficient to support the conclusion that its explanation for the challenged employment action is pretextual." Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting Johnson v. Lehman, 679 F.2d 918, 922 (D.C. Cir. 1982)) (internal quotation marks omitted). In Fischbach, the D.C. Circuit concluded that although the employer had clearly failed to follow established hiring procedures, the circumstances of that case made it unreasonable to infer therefrom that the employer acted with discriminatory motives. See Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d at 1183-84.

The same conclusion is warranted here. The racial homogeneity of the selection panel is easily explained by the fact that all of the management officials within OID are Caucasian (a point discussed further below). Nor is it suggestive of discrimination that the BBG did not recruit non-OID officials to diversify the selection panels for positions M/P 01-119 and M/P 01-151; it was reasonable to have the officials who would ultimately supervise the selectees choose the selectees. In short, Mr. Brown's argument that there was something procedurally irregular about the racial makeup of the selection panels, and that this procedural irregularity suggests discriminatory motives on the part of the BBG, rests on nothing but unreasonable inferences, speculation and unsubstantiated allegations. None of these creates a genuine issue of material fact. See, e.g., Fujitsu Ltd v. Fed. Express Corp., 247 F.3d 423, 428 (2d Cir. 2001) (noting that "the nonmoving party may not rely on conclusory allegations or unsubstantiated speculation") (quoting Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998)); Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993) (a "mere unsubstantiated allegation . . . creates no 'genuine issue of fact' and will not withstand summary judgment").

11

2.  Race of Selectees and OID Employees (Both Positions)

Though it is not entirely clear, Mr. Brown seems to argue that a reasonable jury could conclude that he suffered unlawful discrimination when he was not selected for both positions because all of the selectees were Caucasian.  See Opp. at 1.  He also seems to argue that a reasonable jury could reach the same conclusion because Caucasians occupy all of the management positions within OID, and only one OID employee – Administrative Assistant Marcia Jones – is an African American.  See First Brown Aff. at 5; Second Brown Aff. at 1-2.

The Court rejects both arguments.  The first argument – which assumes that because the selection panel members are Caucasian they acted in a discriminatory manner – is no more than an unsubstantiated allegation.  It is also undercut by the fact that at least one African American individual was interviewed for each of the two positions at issue: Eric Sumlin for position M/P 01-119, see Mot., Ex. E, Certificates of Eligibility for position M/P 01-119 at 1 (Oct. 1, 2001); First Brown Aff. at 3 n.1, and Mr. Brown himself for position M/P 01-151.  See Mot., Ex. O, Certificates of Eligibility for Position M/P 01-151 at 1 (Jan. 4, 2002).  In addition, an Asian American, Susan Kim, was not only interviewed for position M/P 01-115, she was offered the position.  See infra at 5.

Nor does the fact that the small staff of the OID is predominantly Caucasian suggest that Mr. Brown suffered discrimination in this case.  To begin with, nothing in the record suggests that other OID employees were selected by Ms. Stephens, Mr. Mathews and Mr. Vaselopulos, and it would be entirely unreasonable to impute discriminatory animus to those three selecting officials based on hiring decisions they did not make.  Moreover, and more

fundamentally, nothing in the record suggests that qualified African American individuals applied for any of the other positions within the OID.

### 3. Mr. Brown Was Not Placed on All Certificates (M/P 01-119)

As noted above, Mr. Brown could have been – but was not – placed on the "Non-Competitive for GS-13 Level" certificate during the selection process for position M/P 01-119. As a result, he was not interviewed for that position. According to Mr. Brown, the BBG's failure to place him on the "Non-Competitive for GS-13 Level" certificate suggests that the BBG intended to discriminate against him. The Court disagrees.

Once again, the inference advocated by Mr. Brown is simply unreasonable in light of the circumstances of this case. Mr. Brown was not promoted to the GS-13 level, and therefore did not become eligible for the "Non-Competitive for GS-13 Level" certificate, until after he had applied for position M/P 01-119. Moreover, Mr. Brown did not inform the Office of Personnel of his promotion or ask the Office to place him on the "Non-Competitive for GS-13 Level" certificate before the certificates for position M/P 01-119 were created. See Second Brown Aff. at 2. In light of these facts, and given the absence of any evidence in the record to the contrary, the only reasonable inference is that the Office of Personnel made an innocent mistake in failing to place Mr. Brown on the "Non-Competitive for GS-13 Level" certificate. The fact that Mr. Brown was denied an interview as a result is unfortunate but legally irrelevant. "Even if a court suspects that a job applicant was victimized by . . . poor selection procedures it may not second-guess an employer's personnel decision absent demonstrably discriminatory motive." Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d at 1183 (quoting Milton v. Weinberger,

696 F.2d 94, 100 (D.C. Cir. 1982)).  Cf. Kelly v. Hairston, 605 F. Supp. 2d 175, 179 n.3 (D.D.C.

2009) (a "minor procedural irregularity" in personnel practices does not give rise to an inference

of discrimination).

### 4.  Mr. Brown Possessed Superior Qualifications (M/P 01-119)

Mr. Brown's next argument is that his credentials are vastly superior to those of

Ms. Townes, the selectee for position M/P 01-119 – so much so, in fact, that a reasonable jury

could disbelieve the BBG's claim that it hired Ms. Townes solely on the basis of her

qualifications.  See First Brown Aff. at 4 ("The selectee, Ms. Townes, simply cannot match my

credentials [with respect to] 'hard' web design/development experience or knowledge."); Second

Brown Aff. at 3-6 (attempting to discredit the testimony of the selection panel members with

respect to Ms. Townes' credentials).  The Court rejects this argument.

It is true that a factfinder may infer pretext (and hence discrimination) if "a

reasonable employer would have found the plaintiff to be significantly better qualified for the

job."  Aka v. Washington Hospital Center, 156 F.3d 1284, 1294 (D.C. Cir. 1998).  Nevertheless,

because courts do not serve as "super-personnel department[s] that reexamine[] an entity's

business decisions," Holcomb v. Powell, 433 F.3d at 897 (internal quotation marks and citation

omitted), "[a] plaintiff asserting that an employer's explanation is pretextual based upon

comparative qualifications faces a formidable task." Nyunt v. Tomlinson, 543 F. Supp. 2d 25, 39

(D.D.C. 2008).  "[I]n order to justify an inference of discrimination, the qualifications gap must

be great enough to be inherently indicative of discrimination." Jackson v. Gonzales, 496 F.3d

703, 707 (D.C. Cir. 2007) (internal quotation marks and citation omitted).

Here, Mr. Brown has failed to identify a qualifications gap so "wide and inexplicable" as to support an inference of discrimination – even if one assumes, as Mr. Brown argues, that his web site design and development skills are far superior to those of Ms. Townes. Lathram v. Snow, 336 F.3d 1085, 1091 (D.C. Cir. 2003).  The fatal flaw in Mr. Brown's comparative qualifications argument is that position M/P 01-119 did not require high-level web site design and development skills.  See Mot., Ex. J, Deposition of Cristian Brown at 24, 33 (July 31, 2008) ("Q [by opposing counsel]: "Did [the position description for position M/P 01-119] specifically indicate that the selectee had to be a web developer or a web designer?  A [by Mr. Brown]: To the best of my recollection it did not.").  Indeed, as the BBG explains (and Mr. Brown fails to dispute), "the [selection] panel members considered this position primarily to be a project management position," not a web site design and development position.  Mot. at 6 (citing Mot., Ex. G, Deposition of Connie Stephens at 59 (April 24, 2008) ("Stephens Dep.")); see also Stephens Dep. at 9 (noting that position M/P 01-119 "was a project management position within the [OID], and so we were looking for someone who could manage projects, i.e., specifically working with the U.N. Language Services to bring the people who would be working on the web site in the language, to help them define requirements and work with the technical people so that they could develop a database for the web site in their language.").[6]

_____

[6]    This view is consistent with the official vacancy announcement.  The announcement stated that candidates were to be rated, in part, on their "in-depth knowledge of the Web development process and experience working with the latest Internet technologies [including] Web authoring software, content management tools, and multimedia technologies including streaming."  Mot., Ex. B, Vacancy Announcement No. M/P 01-119 at 1 (June 26, 2001).  But these were not the only or even the most important qualifications sought.  Candidates were also to be rated based on their "experience in successful project management involving new technologies and tight deadlines"; their ability to "exercise independent [judgment] in evaluating the capabilities of Web developers, contractors, product vendors, engineers, and other entities";

There is no genuine dispute that Ms. Townes possesses a wealth of relevant project management experience.  <u>See</u> Mot. at 9-11; <u>see also</u> <u>id</u>., Ex. K, Deposition of Martha Townes at 50 (July 22, 2008); Stephens Dep. at 12.  Nor is there any evidence to suggest that her understanding of web site design and development is so weak as to preclude her from satisfactorily performing her duties.  There therefore is no basis for a jury to conclude that she was selected for discriminatory reasons.

The heart of Mr. Brown's argument, it seems, is that the BBG should have weighed more heavily web site design and development skills in selecting an individual for position M/P 01-119.  Perhaps he is right.  But the Court is not permitted to "second guess how an employer weighs particular factors in the hiring decision"; rather, in the absence of any evidence from which a reasonable jury could infer discrimination, the Court must "defer to the employer's decision as to which qualities required by the job it weighs more heavily."  <u>Jackson v. Gonzales</u>, 496 F.3d at 719.

### 5.  Mr. Brown Possessed Superior Qualifications (M/P 01-151)

Mr. Brown does not seem to make a comparative qualifications argument with respect to position M/P 01-151.[7]  Such an argument would fail in any event because the record

_____

their ability to "communicate and negotiate with Web developers, programmers, engineers, contractors, procurement/acquisition officers, and senior managers"; and their "[f]amiliarity with federal contracting and procurement policies, regulations, and procedures, and experience working with contractors."  <u>Id</u>.  Moreover, the vacancy announcement emphasized that the selectee was to play "a *project management role* involving close collaboration with colleagues in the OID and other [International Broadcasting Bureau] technical elements who have specialized Web development skills[.]"  <u>Id</u>. (emphasis added).

[7]    At the very least, Mr. Brown concedes that the selectees were well qualified for position M/P 01-151.  <u>See</u> Brown Dep. at 20, 23, 25.

shows that any "qualifications differential" between Mr. Brown and the selectees "merely indicate[s] [that the BBG had to make] a close call" with respect to several qualified candidates and therefore "fails to move [Mr. Brown's] case beyond summary judgment." Barnette v. Chertoff, 453 F.3d 513, 518 (D.C. Cir. 2006) (internal quotation marks and citation omitted).

### 6.   The Panel Never Intended to Interview Mr. Brown (M/P 01-151)

According to Mr. Brown, a reasonable jury could infer that he suffered discrimination when he was not selected for position M/P 01-151 because he was interviewed for that position "only as 'cover,'" Second Brown Aff. at 6, and it was "never the intent of [the OID] to call [him] for an interview for this position." Id. at 7. This argument is based on Mr. Brown's claim that he was called for an interview only after Ms. Jones, the OID's administrative assistant, brought to Ms. Stephens' attention that Ms. Stephens had not asked her to call Mr. Brown, even though his name appeared on a certificate the panel had decided to interview. See id. at 6-7.

Even assuming Mr. Brown's version of events is true, it does not support an inference of discrimination. According to Mr. Brown, once Ms. Jones brought the issue to Ms. Stephens' attention, "she instructed [Ms. Jones] to call [Mr. Brown] to set up an interview." Second Brown Aff. at 6. Mr. Brown was interviewed soon thereafter. These events would suggest discrimination only if one inferred from them (1) that Ms. Jones stumbled upon a discriminatory plot by Ms. Stephens to deprive Mr. Brown of an interview, and (2) that this plot consisted of omitting Mr. Brown's name from one list of candidates (the list Ms. Jones was asked to call for interviews) but not from another (the list on which Ms. Jones discovered Mr. Brown's name). That is a wholly speculative and thoroughly unreasonable inferential chain.

17

For the reasons stated above, the BBG is entitled to summary judgment.  An Order consistent with this Opinion will issue this same day.

SO ORDERED.


/s/_____
PAUL L. FRIEDMAN
DATE: August 28, 2009                    United States District Judge